IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

JACQUELINE JOHNSON                                    PLAINTIFF

VS.                         CIVIL ACTION NO. 5:15-cv-64(DCB)(MTP)

PHIL BRYANT, GOVERNOR OF THE
STATE OF MISSISSIPPI, ET AL.                          DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the Court on the defendants' Motion to
Dismiss **(docket entry 5)**, and on the plaintiff's Motion to Amend
Complaint **(docket entry 14)**. Having carefully considered the
motions and responses, the memoranda and the applicable law, the
Court finds as follows:

The plaintiff was employed by Alcorn State University ("ASU")
from 1998 until 2014. On July 9, 2014, she was advised that she
could no longer be employed by ASU due to a newly-passed state
statute which prohibited the continued employment of any state
employee who had been "'convicted or pled guilty in any court of
this state, another state, or in federal court of any felony in
which public funds were unlawfully taken, obtained or
misappropriated in the abuse or misuse of the person's office or
employment or money coming into the person's hands by virtue of the
person's office or employment.'" Complaint, ¶ 8 (quoting Miss.
Code Ann. § 25-1-113(2)). The plaintiff resigned under protest.
She admits that she pled guilty to embezzlement of funds, but
maintains that "[t]he statute has a harsh and unconstitutional

effect and result" on her and other citizens of the State of Mississippi.  Id.

The defendants move for dismissal for lack of subject matter jurisdiction on, inter alia, Eleventh Amendment immunity grounds under Fed.R.Civ.P. 12(b)(1), and/or for judgment on the pleadings under Fed.R.Civ.P. 12(c).  Specifically, they claim that plaintiff Johnson's "official capacity" claims are barred by the Eleventh Amendment, and that Johnson does not have a valid federal claim for prospective injunctive relief.  In her motion to amend, the plaintiff simply avers that her "Amended Complaint will clarify her original Complaint, and justice requires that leave to file her Amended Complaint be given."  Motion to Amend, ¶ 2.  The motion incorporates the plaintiff's proposed Amended Complaint.  Id.

In the memorandum in support of her motion, the plaintiff states that she "is clarifying her theory of the pleadings by specifically alleging Mississippi Tort Claims Act claims and [clarifying] the capacity in which the Defendants are sued [i.e. in their individual and official capacities]."  Plaintiff's Memorandum, p. 3.  In response, the defendants state that the plaintiff's proposed Amended Complaint merely restates her original allegations and reorganizes and re-labels her causes of action.  Defendants' Response, ¶ 5.  The defendants further state that the plaintiff's claims are all "frivolous or futile."  Defendants' Memorandum, p. 7.

In her original Complaint, Johnson seeks "damages, declaratory and injunctive relief" against six Mississippi state officials: (1) Phil Bryant, Governor, (2) Jim Hood, Attorney General, (3) Alan Perry, President of the Board of Trustees of the State Institutions for Higher Learning, (4) Dr. Glenn Boyce, Commissioner of the State Institutions for Higher Learning, (5) Dr. Alfred Rankins, Jr., President of Alcorn State University, and (6) Carla Williams, Director of Human Resources of Alcorn State University.  Complaint, ¶¶ 1-7.  The defendants contend that all of Johnson's claims should be dismissed "on account of the Eleventh Amendment, qualified immunity, the Mississippi Tort Claims Act, and for otherwise lacking merit, as a matter of law."  Defendants' Memorandum, p. 5.

The Eleventh Amendment's jurisdictional bar prohibits a federal court from hearing a claim against a state and its agencies and instrumentalities.  <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 104 (1984).  The prohibition also extends to state agency officials sued in their official capacities.  <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989)("[A] suit against a state official in his official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."); <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985)("Official capacity suits ... generally represent only another way of pleading an action against an entity of which an

officer is an agent.").

The extent of the Eleventh Amendment's application to official capacity lawsuits turns on the claims asserted and substantive relief sought. The Eleventh Amendment precludes claims against state officials acting in their official capacities where the plaintiff seeks monetary relief, or retroactive injunctive or declaratory relief, based on allegations that the defendant state officials violated federal law. See Pennhurst, 465 U.S. at 102-03; P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993)(Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"). The Amendment also absolutely bars any claims that any defendant state officials violated, or are violating, state law, no matter whether the plaintiff seeks monetary damages, or any injunctive or declaratory relief. Pennhurst, 465 U.S. at 106, 121; Hughes v. Savell, 902 F.2d 376, 378 (5th Cir. 1990); Personhood Mississippi v. Hood, 2010 WL 538302, at *3 (S.D. Miss. Feb. 9, 2010).

The defendants sued here are state and state agency officials entitled to Eleventh Amendment immunity, which bars Johnson's claims for federal due process, Eighth Amendment cruel and unusual punishment, Article 1 Section 10 ex post facto and bill of attainder, federal conspiracy, § 1981 breach of contract, federal equal protection, and federal law infliction of emotional distress.

4

Complaint, pp. 5-10.   <u>See</u> <u>P.R. Aqueduct</u>, 506 U.S. at 146; <u>Pennhurst</u>, 465 U.S. at 102-03.

Eleventh Amendment immunity also bars Johnson's state law claims under state due process, Article 3 Section 28 cruel and unusual punishment, Section 16 <u>ex</u> <u>post</u> <u>facto</u> and bill of attainder clauses, state equal protection, and state law infliction of emotional distress.  Complaint, pp. 5-10.  <u>See</u> <u>Pennhurst</u>, 465 U.S. at 106, 121; <u>Hughes</u>, 902 F.2d at 378.

In addition, Johnson has not pled federal claims for prospective equitable relief that might bring her claims within the <u>Ex Parte Young</u> doctrine (209 U.S. 123 (1908)), which provides a narrow exception to Eleventh Amendment immunity when a plaintiff sues official capacity defendants for an allegedly ongoing violation of federal law and seeks prospective declaratory or injunctive relief.   <u>Ex Parte Young</u> does not authorize damages claims, any claims premised on alleged state law violations, or any claims premised on alleged federal law violations seeking retrospective relief.  <u>Green v. Mansour</u>, 474 U.S. 64, 68 (1985); <u>Pennhurst</u>, 465 U.S. at 106, 121; <u>Aquilar v. Texas Dept. of Criminal Justice</u>, 160 F.3d 1052, 1054 (5th Cir. 1998).  A plaintiff can rely on <u>Ex Parte Young</u> only if the "plaintiff's suit alleging a violation of federal law [is] brought against individual persons in their official capacities as agents of the state, and the relief sought [is] declaratory or injunctive in nature and prospective in

effect." <u>Aguilar</u>, 160 F.3d at 1054.

To determine whether <u>Ex Parte Young</u> applies, the "court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" <u>Verizon Maryland, Inc. v. Public Serv. Comm'n of Maryland</u>, 535 U.S. 635, 645 (2002) (quoting <u>Idaho v. Couer d'Alene Tribe of Idaho</u>, 521 U.S. 261, 296 (1997)(O'Connor, J., concurring in part, and dissenting in part)). Johnson's Complaint fails this test.  She seeks money damages based on her termination which occurred over a year ago, and only cursorily mentions "declaratory and injunctive relief" once in her Complaint.  Complaint, p. 2.  Her "damages" allegations and "prayer for relief" do not specifically request declaratory or injunctive relief, and do not mention any "prospective" declaratory or injunctive relief.  Complaint, pp. 10-11.  If a plaintiff alleges only a past violation of federal law and seeks a monetary remedy, <u>Ex Parte Young</u> is inapplicable.  <u>Hopkins v. Mississippi</u>, 634 F.Supp.2d 709, 712 (S.D. Miss. 2009).

Furthermore, even if Johnson could invoke <u>Ex Parte Young</u>, she has no federal claim for prospective equitable relief.  Johnson alleges that Miss. Code Ann. § 25-1-113(2) violates her rights under Article 1 Section 10 of the United States Constitution "to be free from State imposed retroactive laws which impaired [her] right to contract with her employer in the nature of an <u>ex post facto</u> law

or Bill of Attainder." Complaint, ¶ 20. However, Article 1 Section 10 prohibits states from passing ex post facto laws. A statute violates the ex post facto clause if it punishes as a crime an act previously committed which was innocent when done, changes the punishment and inflicts a greater punishment than the law attached to a criminal offense when committed, or deprives a person charged with a crime of any defense available at the time the act was committed. Collins v. Youngblood, 497 U.S. 37, 42-44 (1990); Garner v. United States Dept. of Labor, 114 F.Supp.2d 514, 516 (S.D. Miss. 1999). However, the clause "only applies to laws which may be characterized as 'punishment.'" Garner, 114 F.Supp.2d at 516 (citing Fleming v. Nestor, 363 U.S. 603, 613 (1960); Manocchio v. Kusserow, 961 F.2d 1539, 1541 (11th Cir. 1992)). Consequently, a statute does not violate the clause unless the legislature "intended the statute to be 'punitive' at the time of passage." Id. (citing Manocchio, 961 F.2d at 1541).

The inquiry implicates two issues: (1) whether the state legislature intended the statute to be punitive; and (2) if the statute is found to be non-punitive in intent, whether its ancillary punitive effects override its civil purpose. See Smith v. Doe, 538 U.S. 84, 92 (2003); United States v. Ursery, 518 U.S. 267, 288 (1996). As the Supreme Court explained in the context of a Congressional prohibition on employing felons "where unpleasant consequences are brought to bear upon an individual for prior

conduct," the question is "whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation, such as the proper qualifications for a profession." De Veau v. Braisted, 363 U.S. 144, 160 (1960)(citing Hawker v. People of State of New York, 170 U.S. 189 (1898)).

Courts look to certain factors in determining whether, as a matter of law, a statute's effects are criminally punitive, and/or whether its ancillary punitive effects overwhelm its civil purpose. The factors are non-exclusive, and the statute's validity should be presumed since "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Hudson v. United States, 522 U.S. 93, 100 (1997)(quoting United States v. Ward, 448 U.S. 242, 249 (1980)).

The factors include: (1) whether the sanction involves an affirmative disability or restraint; (2) whether the statute's effects have traditionally been regarded as a punishment; (3) whether the effects arise only on a finding of scienter; (4) whether the statute's operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which the statute applies is already a crime; (6) whether the statute may rationally be connected to an alternative purpose; and

(7) whether the sanction appears excessive in relation to the alternative purpose assigned.  See Atlas Roofing Co., Inc. v. Occupational Safety and Health Review Comm'n, United States Dept. of Labor, 518 F.2d 990, 1001-02 (5th Cir. 1975)(citing Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168 (1963)).  Applying these factors to § 25-1-113(2), the Court finds that the statute is neither impermissibly punitive, nor suspect under the ex post facto clause.  The statute's purportedly penal effects do not override its civil purpose.

The purpose of § 25-1-113(2) is not to punish public employees previously convicted of embezzling public funds; rather, the statute regulates government employees' qualifications, and is calculated to preserve and protect the public's trust in state and local governmental entities.  Under the first factor, § 25-1-113(2)'s prohibition may work an affirmative disability or restraint.  However, under the second factor, employment prohibitions are not traditionally regarded as punishment.  See De Veau, 363 U.S. at 158 ("Barring convicted felons from certain employments is a familiar legislative device to insure against corruption in specified, vital areas.  Federal law has frequently and of old utilized this type of disqualification. ... [and] State provisions disqualifying convicted felons from certain employments important to the public interest also have a long history.");  Hawker, 170 U.S. at 196 (holding that prohibiting felons from

obtaining medical licenses is not punishment).  As for the third factor, § 25-1-113(2)'s narrow employment prohibition does not turn on a finding of scienter.  Under the fourth and fifth factors, the statute is not designed to promote the traditional aims of punishment-retribution and deterrence.  Section 25-1-113(2) prevents government entities from employing persons convicted of embezzling government funds.  Embezzling government money is an independent crime.  Any deterrent effect the statute may have is secondary to its non-punitive purposes.

The sixth and seventh factors are the most important.  <u>See Atlas Roofing</u>, 518 F.2d at 1010 (sixth factor "must be carefully restricted. ... Unless caution is exercised, it puts the judiciary squarely in the middle of choices as to the kinds of remedies open and those most likely to achieve the legislative aim.")(internal footnote omitted).

The Court finds that § 25-1-113(2)'s employment prohibition is rationally related to non-punitive purposes.  The State has an interest in the fidelity of its government employees and ensuring the lawful handling of taxpayer dollars.  Section 25-1-113(2) promotes that interest, and Mississippi citizens' confidence in their government, by providing that individuals who have specifically been criminally convicted of abusing that trust are not in a position to do so again.  Furthermore, although § 25-1-113(2)'s prohibition may harshly impact individuals previously

convicted of embezzling public funds, it is narrowly drawn and properly focused. See Flemming, 363 U.S. at 614 ("Where the source of legislative concern can be thought to be the activity or status from which the individual is barred, the disqualification is not punishment even though it may bear harshly upon one affected."); Peeler v. Heckler, 781 F.2d 649, 651 (8th Cir. 1986)("If the law in question is focused on the past crime, then it is likely intended as punishment, while if the focus is on the benefit from which the person is barred, it is not, even though the impact on the person may be harsh."). Measured against the relevant factors and considered as a whole, § 25-1-113(2) imposes a civil consequence rather than a punishment. Johnson has no viable Ex Parte Young claim for prospective equitable relief premised upon any notion that the statute, as applied to her or otherwise, contravenes Article 1 Section 10's prohibition on ex post facto laws.

The plaintiff also alleges that § 25-1-113(2) violates the Eighth Amendment by imposing "excessive punishment and fines upon the Plaintiff." Complaint, ¶ 16. Any Eighth Amendment argument fails for similar reasons that her Article 1 Section 10 contentions fail.

The Eighth Amendment prohibits "cruel and unusual punishments," and "excessive fines." U.S. Const., Amend. VIII. Section 25-1-113(2) does not implicate either prohibition. As explained above, the statute has a legitimate civil purpose and is

11

not primarily punitive in nature.  It does not impose a "cruel and unusual punishment" because any punitive effects it may have on Johnson "are merely incidental and clearly not 'so greatly disproportionate to the offense committed as to be completely arbitrary and shocking to the sense of justice.'"  Garner, 114 F.Supp.2d at 518 (quoting United States v. Vice, 562 F.2d 1004, 1005 (5th Cir. 1977)).

Moreover, § 25-1-113(2) does not impose an "excessive fine" on Johnson, nor any "fine" at all.  The statute prohibits Mississippi governmental entities from employing Johnson, and anyone else convicted of embezzling public funds, but it does not require her to pay a "fine."  Johnson lacks any viable Ex Parte Young claim for prospective equitable relief that § 25-1-113(2), as applied to her or otherwise, violates the Eighth Amendment.  See Averitt v. Cloon, 796 F.2d 195, 198 (6th Cir. 1986)(Eighth Amendment claim for termination of plaintiff's employment following conviction for a felony failed as a matter of law); Mackay v. United States Postal Service, 607 F.Supp. 271, 280 (D.C. Pa. 1985)(Eighth Amendment "does not provide a remedy for deprivation of rights arising out of civil employment by the federal government").

Johnson also alleges that § 25-1-113(2) "violates the equal protection laws in its application and enforcement."  Complaint, ¶ 31.  However, the statute easily satisfies rational basis review and does not run afoul of the Equal Protection Clause.  Convicted

12

felons are not a suspect class, United States v. Jester, 139 F.3d 1168, 1171 (7th Cir. 1998); Hilliard v. Ferguson, 30 F.3d 649, 652 (5th Cir. 1994), and the "right to hold public employment is not a recognized fundamental right." Id. at 652 (quoting Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 313 (1976); and Arceneaux v. Treen, 671 F.2d 128, 133 (5th Cir. 1982)). Accordingly, in evaluating whether § 25-1-113(2) violates the Equal Protection Clause, the only issue is whether the statute bears "a rational relationship [to] some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 320 (1993); see also Schware v. Board of Bar Examiners, 353 U.S. 232, 239 (1957)(concerning occupational licensing, a qualification only requires a "rational connection with the applicant's fitness or capacity" to perform the job).

In this case, the State has paramount interests in trustworthy state and local government institutions and employees, and in whether taxpayer dollars are handled properly at every level of government.  Section 25-1-113(2) serves a legitimate governmental purpose in ensuring that honest individuals serve as government employees.  Under the deferential rational basis standard, the Mississippi Legislature could justifiably presume that generally prohibiting public employment for individuals convicted of embezzling public funds furthers the state's legitimate interests in this area.  In addition, the statute is narrowly directed at only one crime, the embezzlement of public funds.  Embezzlement of

13

public funds is a felony under both State and federal law (Miss. Code Ann. § 97-11-25; 18 U.S.C. § 641), and "[t]he crime of embezzlement involves moral turpitude." 29A C.J.S. Embezzlement § 2 (Supp. 2015). The statute narrowly focuses on a single disqualifying circumstance involving a crime of extreme dishonesty (embezzlement), and specifically targets the source of the embezzled funds (public money). The legislature could justifiably conclude that the statute rationally advances the State's interests in promoting public trust and confidence in government.

Johnson also contends that the "State of Mississippi has violated Plaintiff's procedural and substantive due process rights as well as engaged [in] an unconstitutional taking," Complaint, ¶ 11, and further contends that the "State of Mississippi enacted § 25-1-113 of Mississippi Code Annotated which [lacks] any rational purpose and which has the effect of taking a person's property interest in his or her job without due process." Complaint, ¶ 12. Like her other constitutional arguments, Johnson's due process attack on § 25-1-113(2) fails as a matter of law.

As discussed above, § 25-1-113(2) has a legitimate "rational purpose." Moreover, in order to state a constitutional due process claim, Johnson first must prove that she possessed a constitutionally protected property interest in her continued employment. Whiting v. University of Southern Mississippi, 451 F.3d 339, 344 (5th Cir. 2006); see also Lollar v. Baker, 196 F.3d

14

603, 607 (5th Cir. 1999)("To show a due process violation in the public employment context, the plaintiff must first show that she had a legally recognized property interest at stake."). Constitutionally protected property interests only encompass particular already-acquired benefits, and a plaintiff "must have a legitimate claim to those benefits, not simply an abstract need or unilateral desire[;]" therefore, "[t]o determine if property rights exist, the court must look to state law." Whiting, 451 F.3d at 344 (citing and quoting Board of Regents of State Colleges v. Roth, 408 U.S. 564, 576-78 (1972); Bishop v. Wood, 426 U.S. 341, 344 (1976)).

Johnson has not identified any source of any claimed constitutionally protected property interest in her continued employment at Alcorn State, whether it be a statute, regulation, written contract, or otherwise.  See Id. at 344-45; see also Simpson v. Alcorn State Univ., 27 F.Supp.3d 711, 721-22 (S.D. Miss. 2014)(rejecting university employee's constitutional due process claim for lack of protected property interest in continued employment); Yul Chu v. Mississippi State Univ., 901 F.Supp.2d 761, 778-79 (N.D. Miss. 2012), aff'd, 592 Fed. Appx. 260 (5th Cir. 2014) (dismissing due process claims of non-tenured university professor who failed to identify any viable source of a constitutionally protected property interest).  Absent any constitutionally protected property interest in continued employment, Johnson's due process-based Ex Parte Young attack on § 25-1-113(2) fails to state

15

a claim on which relief can be granted.  Because Johnson cannot invoke Ex Parte Young, her "official capacity" claims leveled against the defendants must be dismissed pursuant to the Eleventh Amendment.

Johnson's original Complaint names six different state officials by reference to their status as officers, and does not clarify whether any of her claims are asserted against any defendants solely in their "official capacity," or also personally in an "individual capacity."  However, in her proposed Amended Complaint, Johnson names the defendants in their "individual capacities" as well as "official capacities."  Proposed Amended Complaint, p. 1.

To the extent that Johnson is asserting any federal "individual capacity" claims against the defendants, whether in the original Complaint or in the proposed Amended Complaint, such claims are barred by qualified immunity.  Qualified immunity shields government officials from suit and liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity applies unless: (1) the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right; and (2) the right at issue was clearly established at the time of the government official's alleged

16

misconduct.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  The second element involves "two separate inquiries: whether the allegedly violated constitutional right [was] clearly established at the time of the incident; and if so, whether the conduct of the defendant [official] was objectively unreasonable in light of then clearly established law."  <u>Tarver v. City of Edna</u>, 410 F.3d 745, 750 (5th Cir. 2005)(internal quotation marks and citations omitted).

A heightened pleading standard applies.  The plaintiff must "allege specific conduct giving rise to a constitutional violation."  <u>Cranford v. Payne</u>, 2006 WL 2701273, at *4 (S.D. Miss. Aug. 23, 2006).  "The standard requires more than mere conclusory assertions alone to overcome the qualified immunity defense."  <u>Id</u>. "[T]he plaintiff must plead specific facts with a level of particularity so that they would, if proved, warrant the relief she seeks."  <u>Burns-Toole v. Byrne</u>, 11 F.3d 1270, 1274 (5th Cir. 1994).

Each of Johnson's purported federal claims fails the first prong of the qualified immunity test.  None of the defendants has violated any of Johnson's alleged federal statutory or constitutional rights.  The Court concludes that Johnson cannot make out a § 1983 claim that any of the defendants violated her federal constitutional rights under Article 1 Section 10, or the Fifth, Eighth or Fourteenth Amendments.  As discussed above with regard to any putative <u>Ex Parte Young</u> claims Johnson might assert, Miss. Code Ann. § 25-1-113(2) does not violate any of those

17

constitutional provisions.   Therefore, none of the defendants violated Johnson's federal constitutional rights on account of the statute's application to her, and Johnson's "individual capacity" claims against the defendants fail as a matter of law.

Any federal claims Johnson may be asserting for "intentional infliction of emotional distress" or "negligent infliction of emotional distress" also fail as a matter of law.   A claim for intentional infliction of emotional distress is not cognizable under § 1983.   Voyticky v. Village of Timberlake, Ohio, 412 F.3d 669, 678 (6th Cir. 2005); Stuckey v. Mississippi Dept. of Transp., 2008 WL 1868421, at *3 (S.D. Miss. Apr. 24, 2008).   Similarly, a claim for negligence or negligent infliction of emotional distress is not cognizable under § 1983.   Diaz ex rel. Diaz v. Mayor of Corpus Christi, 121 Fed. Appx. 36, 39 (5th Cir. 2005); Stuckey, 2008 WL 1868421, at *3.

Johnson also fails to state a viable conspiracy claim against any of the defendants under 42 U.S.C. § 1985, or otherwise. "Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based.   Bald allegations that a conspiracy existed are insufficient."   Lynch v. Cannatella, 810 F.2d 1363, 1369-70 (5th Cir. 1987).   Johnson's threadbare allegations fall short of the Lynch standard.   See also Hoffman v. Stulga, 464 Fed.Appx. 229, 232 (5th Cir. 2011)("[N]one of the facts asserted by [plaintiff] show

that the defendants conspired and agreed to deprive him of his constitutional rights."); Du Bois v. Warne, 336 Fed.Appx. 407, 409 (5th Cir. 2009)("Although [plaintiff] couches her claims in terms of a conspiracy, her conclusory charges are unsupported by specific factual allegations and are insufficient to state a constitutional violation under § 1983."); Spence v. Hood, 170 Fed.Appx. 928, 931 (5th Cir. 2006)(plaintiff's "conclusional allegations of conspiracy are not sufficient to support a claim under § 1983" and "do not establish liability on the part of the defendants in their individual capacities").

Additionally, Johnson cannot meet the elements required to prove a conspiracy.  A conspiracy accusation requires showing that an actual violation of § 1983 or a deprivation of a federal right occurred, and that the defendants agreed to commit an illegal act. See Hale v. Townley, 45 F.3d 914, 920 (5th Cir. 1995); Arsenaux v. Roberts, 726 F.2d 1022, 1024 (5th Cir. 1982).  A plaintiff must also show that the conspiracy was motivated by a class-based animus. Hilliard v. Ferguson, 30 F.3d 649, 652-53 (5th Cir. 1994).  As previously discussed, Johnson has no viable § 1983 claim or any other federal claim.  There has been no federal law violation by any defendants upon which a conspiracy could be predicated. Johnson has not pled any factual allegations demonstrating an agreement among two or more defendants to violate her federal rights.  Nor can the plaintiff contend that any defendant's actions

19

were motivated by class-based animus.

Johnson also has no viable "individual capacity" federal "breach of contract" claims against the defendants.  Apparently, Johnson premises her "breach of contract" claim upon 42 U.S.C. § 1981.  Complaint, ¶ 28.  To justify a claim under § 1981, "a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." Green v. State Bar of Texas, 27 F.3d 1083, 1086 (5th Cir. 1994).

Section 25-1-113(2) precludes governmental entities from employing persons convicted of embezzling public funds.  The statute has nothing to do with race.  Johnson cannot contend, and has not alleged, that any of the defendants acted with intent to discriminate against her, or anyone else, on account of race; therefore, Johnson cannot assert a § 1981 claim.  See James v. Parish, 421 Fed. Appx. 469, 470 (5th Cir. 2011)(dismissing § 1981 claim where plaintiff did not allege any facts that would indicate the defendant took the challenged action because of plaintiff's race); Southern v. Ethridge, 2010 WL 3937880, at *2 (S.D. Miss. Sept. 30, 2010)(dismissing § 1981 claim for, among other grounds, failure to allege intent to discriminate against plaintiff on the basis of race).

20

Finally, Johnson has failed to sufficiently allege any specific personal involvement in any alleged violation of her federal rights on the part of the Governor, Attorney General, IHL officials, and/or Alcorn State officials.  Individuals are not liable under § 1983 unless they were personally involved in the complained-of actions, or unless some causal connection between their actions and the alleged constitutional deprivation exists. Hinshaw v. Doffer, 785 F.2d 1260, 1263 (5th Cir. 1986); Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); see also Anderson v. Pasadena Indep. Sch. Dist., 184 F.3d 439, 443 (5th Cir. 1999)(state official sued in his or her individual capacity is not vicariously responsible for the acts of his or her subordinates).  In other words, "to establish the personal liability of a given defendant, the plaintiff must show that a particular official's action (or inaction) caused a violation of plaintiff's rights." Jackson v. Hollowell, 714 F.2d 1372, 1377 (5th Cir. 1983)(quoting Williams v. Treen, 671 F.2d 892, 900 n.15 (5th Cir. 1982)).  Johnson's failure to assert any particular personal involvement of the defendants outside the scope of their official duties in allegedly depriving her of any federal rights precludes any finding of "individual capacity" liability.  Therefore, any putative "individual capacity" claims fail under the first qualified immunity prong.

Even assuming that Johnson could meet the first prong of a qualified immunity analysis, her purported federal "individual

capacity" claims against the defendants would still be subject to dismissal.  The second qualified immunity prong requires Johnson to demonstrate that the defendants personally violated her clearly established rights at the time of the incident, and that the defendants' conduct was objectively unreasonable in light of then clearly established law.  <u>Tarver</u>, 410 F.3d at 750.  It is not established, much less clearly established, that persons convicted of embezzling public funds have a constitutional right to be free of any restrictions on governmental employment – much less the narrowly tailored prohibition enacted by the Mississippi Legislature in § 25-1-113(2).  Even if Johnson could satisfy the first qualified immunity element, any putative "individual capacity" claims against any of the defendants would have to be dismissed.  <u>See</u>, <u>e.g.</u>, <u>Jaqnandan v. Giles</u>, 538 F.2d 1166, 1173 (5th Cir. 1976), <u>cert. denied</u>, 432 U.S. 910 (1977)(holding that, even where court deemed state statute unconstitutional, Mississippi State University officials could not be held personally liable for damages where there was "nothing in the record to indicate defendants acted unreasonably or in a manner outside their official capacity," officials were not on notice of statute's unconstitutionality, and officials acted in complete good faith).

As for Johnson's state law "individual capacity" claims, the Court is not required to address these claims if it has no independent basis for exercising jurisdiction over her lawsuit.

See 28 U.S.C. § 1367(c)(3)(district court may decline to exercise jurisdiction if it "has dismissed all claims over which it has original jurisdiction"); Peters v. City of Biloxi, 57 F.Supp.2d 366, 379 n.23 (S.D. Miss. 1999)("When federal claims are disposed of prior to trial, generally the court should decline to exercise pendent, or supplemental, jurisdiction.")(citing United Mine Workers v. Gibbs, 383 U.S. 715 (1966)).

The Court shall dismiss all of the plaintiff's federal claims. Pursuant to 28 U.S.C. § 1367(c)(3), the Court shall also decline to exercise jurisdiction over the plaintiff's state law claims.

After the defendants filed their Motion to Dismiss, and before the plaintiff filed her response to the defendants' motion, the plaintiff filed her Motion to Amend Complaint.  The plaintiff's motion to amend states that Johnson "is clarifying her theory of the pleadings by specifically alleging Mississippi Tort Claims Act claims and ... the capacity in which the Defendants are sued." Motion to Amend Complaint, p. 3.

The proposed Amended Complaint adds no new federal claims. Johnson does add a claim under the Mississippi Tort Claims Act, but as previously discussed, the Court is granting the defendants' motion to dismiss all federal claims, and declining to exercise jurisdiction over any state law claims.  The plaintiff's motion to amend complaint shall therefore be denied.  The federal claims shall be dismissed with prejudice and the state law claims

dismissed without prejudice.

Accordingly,

IT IS HEREBY ORDERED that the defendants' Motion to Dismiss **(docket entry 5)** is GRANTED;

FURTHER ORDERED that the plaintiff's Motion to Amend Complaint **(docket entry 14)** is DENIED.

A Final Judgment shall issue this day dismissing all federal claims with prejudice and dismissing all state law claims without prejudice.

SO ORDERED, this the 15th day of March, 2016.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE

24